UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS CENTRAL COLLECTION AGENCY et al., | * * * |
| Plaintiffs, | * * |
| v. | * Civil Action No. 15-cv-13721-ADB * |
| WHIPPLE CONSTRUCTION INC. and GEOFFREY EVANCIC, | * * * |
| Defendants. | * |

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT

BURROUGHS, D.J.

On November 3, 2015, the Trustees of New England Carpenters Guaranteed Annuity Fund, New England Carpenters Pension Fund, New England Carpenters Health Benefits Fund, New England Carpenters Vacation Savings Fund, and New England Carpenters Training Fund (collectively, "the Funds") and the New England Carpenters Central Collection Agency (together with the Funds, "Plaintiffs") filed a complaint against Whipple Construction, Inc. ("Whipple Construction") and Geoffrey Evancic ("Evancic") (together, "Defendants") alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act of 1947 based on Whipple Construction's failure to make employer contributions to the Funds as required by a collective bargaining agreement. [ECF No. 1 ("Complaint" or "Compl.")]. The Court entered a notice of default against Evancic on September 17, 2018. [ECF No. 40]. Currently pending before the Court is Plaintiffs' Renewed Motion for Entry of

1

Default Judgment against Evancic.[1]  [ECF No. 51].  For the following reasons, the Renewed Motion for Entry of Default Judgment [ECF No. 51] is GRANTED.

I.   FACTUAL BACKGROUND

The following summary of facts is drawn from the Complaint, the well-pleaded allegations of which the Court accepts as true for purposes of this Memorandum and Order.  See Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir. 1985) (explaining that after the entry of a default, allegations of fact in the complaint must be taken as true); see also Franco v. Selective Ins., 184 F.3d 4, 9 n.3 (1st Cir. 1999) ("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.").

The Funds are trusts established in accordance with 29 U.S.C. § 186(c) and are employee pension benefit or welfare plans as defined by 29 U.S.C. § 1002(2).  [Compl. ¶ 4].  The United Brotherhood of Carpenters & Joiners of America and the New England Regional Council of Carpenters (together, the "Union") are labor organization as defined by 29 U.S.C. § 152(5).  [Id. ¶ 5].  The Funds are maintained pursuant to collective bargaining agreements between the Union and employers under which employers contribute to the Funds for covered work performed by employees.  [Id. ¶ 6].

Whipple Construction, which was run by Evancic, was an employer subject to a collective bargaining agreement with the Union.  [Id. ¶¶ 8–11].  As such, Whipple Construction was obligated to make contributions to the Funds for each hour of work performed by its employees under a collective bargaining agreement.  [Id. ¶ 11].  Whipple Construction failed to

---

[1] Whipple Construction is subject to an ongoing Chapter 7 bankruptcy proceeding.  See [ECF No. 50].

2

make contributions to the Funds for work performed by its employees and failed to submit reports of the number of hours worked by each employee. [Id. ¶¶ 13–14].

During this time, Evancic had broad personal discretion and control over the assets and expenditures of Whipple Construction. [Id. ¶ 19]. This included making the decision to withhold payment of amounts that were due to the New England Carpenters Health Benefits Fund ("Health Benefits Fund"). [Id. ¶ 20]. Under the terms of the trust agreement for the Health Benefits Fund, these amounts due, but not yet paid, were assets of the Health Benefits Fund from the moment they became due. [Id. ¶ 17]. By virtue of exercising discretion and control over assets of the Health Benefits Fund, Evancic was a fiduciary of the Health Benefits Fund within the meaning of 29 U.S.C. § 1002(21). [Id. ¶ 19].

## II. PROCEDURAL HISTORY

Plaintiffs initiated this action on November 3, 2015. [ECF No. 1]. Evancic was served on November 9, 2015. [ECF No. 4]. When Defendants failed to answer or otherwise respond to the Complaint, Plaintiffs requested a notice of default on December 3, 2015. [ECF Nos. 6, 7]. On December 7, 2015, the Court ordered Defendants to show cause why the Court should not enter a default and ordered them to respond to the Complaint by December 18, 2015 or risk a default. [ECF No. 8]. Defendants filed their answer on December 30, 2015. [ECF No. 11].

On January 7, 2016, Plaintiffs moved to strike the untimely filed answer and again sought an entry of default against Defendants. [ECF No. 12]. On April 6, 2016, Plaintiffs' counsel advised the Court that Whipple Construction had a matter pending in the U.S. Bankruptcy Court for the District of Massachusetts and stated his belief that the automatic stay applied to further prosecution of Whipple Construction. [ECF No. 20]. The Court held a status conference on June 22, 2016, at which counsel for Defendants appeared. [ECF Nos. 23, 24]. The Court

granted Plaintiffs' motion to strike but denied the request for a default judgment and ordered Defendants "to file an answer to the Complaint and/or a status report within 60 days." [ECF No. 24].

In compliance with the Court's order, Defendants filed a status report on August 22, 2016 and requested additional time to respond to the Complaint or to file an additional status report. [ECF No. 25]. The Court allowed a 60-day extension. [ECF No. 26]. Defendants filed another status report on November 1, 2016, which again requested additional time to respond or to file an additional status report. [ECF No. 27]. The Court allowed the extension to January 2, 2017. [ECF No. 28].

After Defendants failed to file an answer or additional status report, the Court, on March 8, 2017, ordered Defendants to show cause why a default judgment should not be entered and required a status report by March 21, 2017. [ECF No. 29]. Defendants complied with the order and filed a status report on March 21, 2017, which advised the Court of the ongoing bankruptcy action. [ECF No. 30]. The same day, Defendants' counsel moved to withdraw himself as counsel based on a breakdown of communication between him and Defendants. [ECF No. 32]. The Court granted the motion to withdraw on March 22, 2017. [ECF No. 34].

Thereafter, the Court sought updates from the parties and requested regular status reports due on June 1, 2018 and September 14, 2018. [ECF Nos. 35–38]. Only Plaintiffs submitted status reports, which advised the Court of the ongoing bankruptcy involving Whipple Construction. [ECF Nos. 36, 38]. On September 14, 2018, Plaintiffs requested a notice of default against Evancic. [ECF No. 39]. The Court entered a notice of default on September 17, 2018. [ECF No. 40].

On January 7, 2019, the Court entered the following order:

> A default as to Defendant Geoffrey Evancic was entered in this case on September 17, 2018 [ECF No. 40], but Plaintiff has not filed a motion for a default judgment. Accordingly, Plaintiff is hereby <u>ORDERED</u> to show cause, in writing, by <u>January 14, 2019</u>, as to why this case should not be dismissed as to Defendant Geoffrey Evancic for failure to prosecute, or to file a motion for a default judgment by that date.

[ECF No. 44]. On January 14, 2019, Plaintiffs filed a statement of cause and a first motion for entry of default judgment, which was supplemented by an affidavit detailing damages and taxable costs. [ECF Nos. 45, 46, 46-1]. On April 11, 2019, the Court denied the motion for entry of default, with leave to renew because the motion lacked explanation and documentation supporting the amount of delinquent contributions and payments, the amount attributable to the Health Benefits Fund, and the amount of attorney's fees and costs. [ECF No. 47].

On July 3, 2019, when no renewed motion for default judgment had been filed, the Court ordered Plaintiffs to show cause by July 17, 2019 why the case should not be dismissed for failure to prosecute or to file a renewed motion for a default judgment. [ECF No. 49]. On July 17, 2019, Plaintiffs filed a Renewed Motion for Entry of Default Judgment with a supporting affidavit and documentation. [ECF No. 51]. As of August 6, 2019, Evancic has not filed a response.

### III. DISCUSSION

Pursuant to Rule 55(b), a plaintiff seeking default judgment "must apply to the court" whenever the amount of damages claimed is not a "sum certain." Fed. R. Civ. P. 55(b). As an initial matter, the Court is assured that it has both subject matter jurisdiction and personal jurisdiction over the action pursuant to ERISA, under which the only count against Evancic is

asserted.[2]  See [Compl. ¶¶ 17–21]; Plasterers' and Cement Masons' Local 40 Pension Fund v. Capital Curbing Corp., No. 09-cv-00236, 2010 WL 1424722, at *2 (D.R.I. Mar. 12, 2010), aff'd and adopted, 2010 WL 1376293 (D.R.I. Apr. 6, 2010).  Once satisfied that jurisdiction is proper, the Court reviews the well-pleaded facts alleged in the Complaint to determine whether they state a claim on which relief may be granted.  Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002).  If the Court finds that the Complaint states a claim, it calculates damages.  See G. & C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 34 n.7 (1st Cir. 1980).

### A. Liability

On a motion for a default judgment, the Court considers "all well-pleaded factual allegations as true, to determine whether [the complaint] alleges a cause of action."  Ramos-Falcon, 301 F.3d at 2; see also Franco, 184 F.3d at 9 n.3 ("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.").  Where the complaint contains facts sufficient to state a claim upon which relief can be granted, the defendant's liability is established at the time of default.  See Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 41 (1st Cir. 2012); Brockton Sav. Bank, 771 F.2d at 13.

---

[2] The Court has subject matter jurisdiction over the ERISA claim pursuant to 29 U.S.C. § 1132(e)(1).  See 29 U.S.C. § 1132(e)(1) ("[T]he district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by . . . a . . . fiduciary . . . .").  The Court has personal jurisdiction over Evancic because he was lawfully served in the United States pursuant to ERISA.  See Univ. of Mass. Med. Ctr. v. C & M Corp., 16 F. Supp. 2d 110, 112 (D. Mass. 1998) ("By virtue of the fact that [Defendant] was lawfully served within the United States pursuant to a federal statute, under the law of this circuit, this Court has personal jurisdiction over [Defendant]." (citing United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085–86 (1st Cir. 1992))); see also [Compl. ¶ 9 (stating that Evancic resides in Massachusetts); ECF No. 4 (return of service for Evancic)].

The Complaint brings a claim against Evancic in his role as an ERISA fiduciary. [Compl. ¶¶ 17–21]. Under ERISA, individuals who have authority or control over plan assets or who have any discretionary authority in the administration of a plan are considered fiduciaries. 29 U.S.C. §1002(21)(A) ("[A] person is a fiduciary with respect to a plan to the extent . . . he exercises . . . any authority or control respecting management or disposition of its assets . . . or . . . he has any discretionary authority or discretionary responsibility in the administration of such a plan."). ERISA fiduciaries are subject to a host of restrictions, including a prohibition on "deal[ing] with the assets of the plan in [their] own interest or for [their] own account." 29 U.S.C. § 1106(b)(1). ERISA imposes liability for breaches of fiduciary duty and makes fiduciaries personally liable for losses to a plan. 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . .").

Under this framework, the Complaint states an ERISA claim against Evancic. First, the Complaint establishes that ERISA applies to the Health Benefits Fund, which qualifies as an employee pension benefit or welfare plan. [Compl. ¶ 4]. Second, the Complaint alleges that due but unpaid contributions to the Health Benefits Fund were plan assets under the terms of the collective bargaining agreement and relevant trust agreements. [Id. ¶ 18]; see In re Fahey, 482 B.R. 678, 691 (1st Cir. B.A.P. 2012) (affirming bankruptcy court's ruling that, based on the unambiguous terms of the collective bargaining agreement and trust agreement, "the delinquent [c]ontributions were assets of the Funds, despite the fact that they remained in [defendant's] possession . . . ."). Third, the Complaint describes how Evancic, as "President, Treasurer, Secretary, and sole Director" of Whipple Construction maintained complete discretion over

7

Whipple Construction's funds, including the plan assets, and thereby became a fiduciary. [Compl. ¶¶ 19–20]. The discretion alleged is sufficient to establish that Evancic was a fiduciary within the meaning of ERISA. See In re Fahey, 482 B.R. at 691–94 (concluding that defendant, who was "president and sole owner of a corporation whose debt to an ERISA plan was a plan asset" and who had "assumed unfettered authority in all matters directly and indirectly related to [the company's] payment of contributions to the Funds," was an ERISA fiduciary). Finally, the Complaint asserts that while a fiduciary, Evancic breached his duties to the plan by withholding contributions due and allocating plan assets to Whipple Construction's other obligations. [Compl. ¶¶ 20–21]. Evancic's use of fund assets for his own gain or for the gain of Whipple Construction, over which he had full control, constitutes a prohibited transaction under the terms of § 1106 of ERISA.

  **B.** **Damages**

Although entry of default establishes liability, it does not establish the amount of damages owed to the plaintiff for purposes of default judgment. See G. & C. Merriam Co., 639 F.2d at 34 n.7. In calculating damages, the Court may conduct a hearing but is not required to do so, particularly where the facts alleged, together with affidavits submitted by the moving party, adequately establish the amount of the default judgment. See In re The Home Rests., Inc., 285 F.3d 111, 114–15 (1st Cir. 2002) (district court did not abuse its discretion by entering default judgment without a hearing, where there was "no uncertainty about the amounts at issue," the pleadings contained "specific dollar figures," and the court requested and received affidavits in support of the default judgment).

Here, Plaintiffs seek a default judgment in the amount of $18,071.36, comprised of the following: (i) $9,195.79 in principal, (ii) $3,043.57 in interest, (iii) $1,839.16 in liquidated

damages[3]; (iv) $3,515.00 in attorney's fees, and, (v) $477.84 in costs. [ECF No. 51-1 ¶¶ 9, 16–19]. In support of these figures, Plaintiffs have provided the Court with calculations supporting the benefit contribution delinquency, excerpts from the relevant collective bargaining agreement and trust agreement setting forth terms for interest and liquidated damages, and an affidavit from attorney Thomas Landry showing costs incurred as well as hours worked by counsel on this matter and billing rates. [ECF Nos. 51-1, 51-2, 51-3, 51-4, 51-5]. Upon consideration of the Renewed Motion for Entry of Default Judgment and accompanying affidavit and documentation, the Court agrees that Plaintiffs are owed a total of $18,071.36, as set forth above.

## IV.    CONCLUSION

Accordingly, Plaintiffs have sufficiently established liability and damages through their allegations and supporting evidence, and their Renewed Motion for Entry of Default Judgment [ECF No. 51] is GRANTED in the amount of $18,071.36.

**SO ORDERED.**

August 6, 2019                                              /s/ Allison D. Burroughs
                                                            ALLISON D. BURROUGHS
                                                            U.S. DISTRICT JUDGE

---

[3] The affidavit submitted with the Renewed Motion for Entry of Default Judgment states that liquidated damages are "equal to 20% of the principal amount owed," or 20% of $9,195.79 [ECF No. 56-1 ¶ 17]. It calculates liquidated damages to be "$2,567.61 ($9,195.79 x 20%)." [Id.]. The Court corrects this error and uses the figure of $1,839.15 instead.